John Lee COOK, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–98–00027–CR.

Court of Appeals of Texas, El Paso.

July 29, 1999.

See also 1 S.W.3d 722.

Paul Higdon, Cook, Cantacuzene & Higdon, Midland, for Appellant.

Al W. Schorre, Jr., Dist. Atty., Robert L. Stevens, Asst. Dist. Atty., Midland, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury conviction for the offense of resisting a search. The court assessed punishment at six (6) months' confinement in the county jail. We reverse and remand.

### I. SUMMARY OF THE EVIDENCE

The jury heard from Bernard Kraft, a sergeant with the Midland Police Department, who testified that on April 10, 1997 at approximately 11:00 a.m., he went to an area of the city known as "The Flats" in anticipation of setting up a mobile police substation. At the intersection of Lee and Illinois Streets, he saw Appellant standing with a female. He had his left hand held out. On top of his hand was a white kleenex or baggy. Appellant was flipping through something with his thumb as if he were counting something and showing it. Sergeant Kraft testified that this was a typical way of selling drugs in the area. He stated that the area was an open market regarding drugs. He based this observation on his past experience as a narcotics officer. He had witnessed this type of movement with the hand and thumb when he had bought drugs in an undercover capacity. In light of all of the above, Sergeant Kraft thought that a drug transaction was taking place.

When Appellant saw Sergeant Kraft, he put his left hand in his coat pocket. Sergeant Kraft slowly drove past Appellant. At that time, a business owner in the area flagged Sergeant Kraft down to complain about people selling drugs in front of his place of business. Sergeant Kraft then exited the patrol vehicle and walked over to Appellant and said, "John, we need to go up against the wall. I need to pat you down." At that instant, Appellant tried to walk away from Sergeant Kraft, who caught up with him. Appellant was un-

cooperative and demanded to know why he was being stopped. Sergeant Kraft nonetheless placed Appellant up against a wall. While against the wall, Appellant kept trying to reach into his coat pocket as Sergeant Kraft tried to pat him down. Sergeant Kraft tried to grab Appellant's wrist to keep him from reaching into his pocket. It was the Sergeant's belief that Appellant might be armed. Appellant then turned around and swung with his fist at Sergeant Kraft who ducked to avoid being hit. He reached for his pepper spray and tried to spray Appellant but the wind blew the spray away. Appellant then ran off. After a chase, Sergeant Kraft caught up with Appellant. Sergeant Kraft had yelled to Appellant to stop during the chase. Sergeant Kraft apprehended Appellant and once again searched him. The witness stated that he was wearing a police uniform and was driving a marked police car during the incident.

During cross-examination, Sergeant Kraft stated that the business owner, Nathaniel Maloy, related to him that Appellant was not the individual that he was referring to when he complained to Sergeant Kraft about individuals selling drugs in front of his business.

Appellant presented the testimony of Nathaniel Maloy. Maloy stated that he was the owner of a business called Player's Lounge. He stated that there had been an incident earlier with a juvenile who Maloy thought was selling drugs near his building. Maloy flagged down Sergeant Kraft and told him of the incident with the juvenile. When Sergeant Kraft approached Appellant and told him to get against the side of the building, Maloy told Sergeant Kraft that Appellant wasn't the individual he had seen earlier. Sergeant Kraft responded that he thought he had seen Appellant do something earlier.

Appellant testified in his own behalf. He stated that he had been in a nearby sandwich shop. He left the sandwich shop and started to go across the street to speak to Maloy when Maloy flagged down

a police car. He waited for Maloy and the sergeant to finish their conversation. Meanwhile, a friend of Appellant passed by and he briefly spoke with her. Appellant stated that he then heard someone tell him to get up against the wall. He heard Moloy state, "You got the wrong man." The sergeant grabbed Appellant's left arm and started to put it behind his back. Appellant pulled his arm away and the sergeant reached for his mace can and sprayed him in the face. Appellant further stated that he went into an alley and later walked up to the sergeant to demand an explanation. It was at that point that he was placed under arrest.

## II. DISCUSSION

■ In Point of Error No. One, Appellant asserts that the evidence is both legally and factually insufficient to support his conviction for resisting a search in that the State failed to prove an essential element of the offense of resisting a search. Specifically, Appellant contends that, as a matter of law, a pat-down or frisk type search attendant upon a temporary detention is not the type of search proscribed by section 38.03 of the penal code. Tex. Penal Code Ann. § 38.03 (Vernon 1994) provides, in pertinent part:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search or transportation of the actor or another by using force against the peace officer or another.

(b) It is no defense to prosecution under this section that the arrest or search was unlawful.

Appellant cites Molina v. State, 754 S.W.2d 468 (Tex.App.—San Antonio 1988, no pet.) and other authority in support of his contention. In Molina, the court of appeals held that section 38.03 contemplates resisting an effort to implement a traditional arrest and not resisting an in-

vestigative detention or stop. *Id.,* at 474. Appellant reasons that, as resistance to an arrest must be to an actual arrest and not an investigative detention or stop, any resistance to a search must be to a "traditional" search and not a search incident to an investigative detention or stop. Appellant cites no authority in support of this assertion. In one recent case the Eastland Court of Appeals held that a police officer was "effecting a search" when he resisted a pat-down search of his person incident to an investigatory detention. *Jackson v. State,* 993 S.W.2d 162–65 (Tex.App.—Eastland 1999). The court reasoned that, as such, the accused was culpable for the offense of resisting arrest. *Id.*

We agree with the analysis of the *Jackson* case noted above. We can perceive no reason why a pat-down or frisk type search should have a lesser consequence to one who resists such a search. Appellant does not contend in his brief that the evidence in the present case does not demonstrate that resistance to such a search occurred. Clearly, under any evidentiary standard Appellant used force to obstruct a search. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant maintains that the trial court erred in failing to grant his motion to suppress the evidence in that the facts do not support that a reasonable person, viewing the totality of the circumstances, could conclude that there was a reasonable suspicion to detain Appellant. In reviewing a trial court's ruling, an appellate court must first determine the applicable standard of review. The amount of deference a reviewing court affords to a trial court's ruling on a mixed question of law and fact often is determined by which judicial actor is in a better position to decide the issue. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). If the issue involves the credibility of a witness, thereby making the evaluation of that witness's demeanor important, compelling reasons exist for allowing the trial court to apply the law to the facts. *See id.* In other situations, if the issue is whether an officer had probable cause to seize a suspect under the totality of the circumstances, the trial judge is not in an appreciably better position than the reviewing court to make that determination. *See id.* Therefore, although due weight should be given to the inferences drawn by trial judges and law enforcement officers, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *See id.*

In a hearing on a motion to suppress, the trial judge is the sole trier of fact, and he may choose to believe or disbelieve any or all of the witnesses' testimony. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). Under *Guzman,* we must give great deference to the trial court's ruling to the extent that it involved an evaluation of the credibility of witnesses or an evaluation of their demeanor. Because the trial court overruled Appellant's motion to suppress, we will presume that the judge found the police officer's testimony credible. However, we will review the issue of "reasonable suspicion" de novo. *See Guzman,* 955 S.W.2d at 87.

■ The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him or her to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Woods v. State,* 956 S.W.2d 33, 38–39 (Tex. Crim.App.1997). When a detention is based upon conduct by the suspect, the conduct need not itself be unlawful or in some sense inconsistent with innocence. Innocent behavior will frequently provide the basis for a showing of probable cause or reasonable suspicion and in making a determination of probable cause or reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or

criminal, but the degree of suspicion that attaches to particular types of noncriminal acts. *Id.*, at 38. Also, objective facts, meaningless to the untrained, when used by trained law enforcement officers can be combined with permissible deductions from such facts to form a legitimate basis for suspicion of a particular person. *Id.*, at 37–38.

In the present case, Sergeant Kraft stated that he saw Appellant with his left hand raised and he was using his thumb as if he was counting some unknown object. Sergeant Kraft stated that from past experience, this was indicative of a drug transaction and the area was known for drug dealing. Appellant tried to go away from Sergeant Kraft when he was told that he was going to be patted down.

■■■■ The high-crime or drug dealing reputation of the area cannot alone serve as a basis for an investigative stop. *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex. Crim.App.1994). The circumstances of two people speaking on the street in daylight hours is much less suspicious than a circumstance occurring at late night or early morning hours. *Id.* Furthermore, the situation where an individual walks away from the approach of an officer is not a circumstance that can be automatically used to further the supposition that the conduct is suspicious criminal activity. *Id.*

We find however, that under the totality of the circumstances, Sergeant Kraft did not have a reasonable suspicion that criminal activity was taking place. Sergeant Kraft was unable to see what object, if any, was in Appellant's hand. He had no prior report concerning specific drug dealing on that day by someone resembling Appellant. We find that the investigatory detention of Appellant was illegal. *See State v. Shamsie*, 940 S.W.2d 223, 227–28 (Tex.App.—Austin 1997, no pet.); *Smith v. State*, 759 S.W.2d 163, 164–65 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd).

While the issue of the illegality of the search is not relevant to the sufficiency of the evidence, it is pertinent regarding the suppression of Sergeant Krafts testimony. Accordingly, Point of Error No. Two is sustained.[1]

Having overruled Appellant's first point of error, but further sustaining Point of Error No. Two, we reverse the judgment of the trial court and remand the cause to the trial court for proceedings not inconsistent with this opinion.

---

1. We note that Appellant filed the identical brief in the instant cause and in cause No.08–98–00028–CR. Appellant's Point of Error No.

Three in the brief filed in this case is pertinent only to cause No. 08–98–00028–CR and as a result, is not addressed in this opinion.